UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HENRY LAZO-ESPINOZA,                          :
                                              :
                          Plaintiff,          :
                                              :          **OPINION AND ORDER**
              -against-                       :          10-CV-2089 (DLI)
                                              :
MICHAEL J. ASTRUE,                            :
Commissioner of Social Security,              :
                                              :
                          Defendant.          :
------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Henry Lazo-Espinoza ("Plaintiff") filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act") on May 18, 2009.  (Compl. ¶ 8.)  By a decision dated November 3, 2009, Administrative Law Judge David Z. Nisnewitz ("ALJ") concluded that Plaintiff was not disabled within the meaning of the Act.  (*Id.* ¶ 10.)  On March 9, 2010, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (*Id.* ¶ 11.)  On May 5, 2010, Plaintiff commenced the instant action seeking reversal of the Commissioner's decision and remand solely for the calculation of benefits.

On August 6, 2010, the Commissioner served the administrative record and answer.  On October 1, 2010, Plaintiff's counsel informed the Commissioner that the administrative record was missing a letter brief dated December 30, 2009 (the "Brief") that Plaintiff previously had sent to the Appeals Council.  (*See* Dkt. Entry 14, Declaration of Candace Scott Appleton ("Appleton Decl.") ¶ 2; *see also* Dkt. Entry 16, Mem. of Law in Supp. of Pl.'s Cross-Mot. for J. on the Pleadings and in Opp'n to Def.'s Mot. for J. on the Pleadings ("Pl. Mem.") at 3.)  Upon review of the records, the Commissioner also learned that Plaintiff had filed a subsequent

disability application on April 16, 2010, which is currently pending before an ALJ hearing office.  (Appleton Decl. ¶¶ 3-4.)

The Commissioner now moves for remand, pursuant to the fourth sentence of 42 U.S.C. § 405(g), to reconsider Plaintiff's claim in light of the Brief submitted to the Appeals Council and any potential new evidence obtained as part of Plaintiff's subsequent disability application.  (*See* Dkt. Entry 13, Mem. of Law in Supp. of the Def.'s Mot. for Remand ("Def. Mem.") at 1.) Additionally, the Commissioner argues remand is appropriate because the existing record does not compel a finding that the criteria for disability were met.  (*Id.*)  Plaintiff cross-moves for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c), asserting the ALJ erred by dismissing substantial evidence of Plaintiff's alleged medical impairment at step three of his evaluation and by failing to give controlling weight to the opinions of Plaintiff's treating physicians at step four of his evaluation.  (Pl. Mem. at 1.)  Plaintiff argues that the record contains sufficient evidence to support the finding that he is disabled.  (*Id.*)

For the reasons set forth below, the Commissioner's motion is granted, Plaintiff's cross-motion is denied and the matter is remanded for further administrative proceedings consistent with this opinion.

## BACKGROUND

## I.     Non-medical and Self-reported Evidence

Plaintiff alleges he became disabled on February 1, 2009.  (A.R. at 32.) [1]   On October 13, 2009, the ALJ held an administrative hearing to review Plaintiff's disability claim.  (*Id.* at 25, 26.)  Plaintiff was represented by a paralegal from Queens Legal Services at the hearing and a

---

[1] "A.R." citations are to the correspondingly numbered pages in the certified administrative record.

Spanish interpreter was also present.[2]  (*Id.* at 25, 26, 91.)  Plaintiff was born in Ecuador and came to the United States in 1988.  (*Id*. at 27.)  Plaintiff is married but currently lives alone.  (*Id.*) He has held a variety of jobs in the United States, including employment as a distributor in a knitting factory from 1994 to 1998; a building maintenance porter from 1996 to 2005; and a taxi driver from 2007 to 2009.  (*Id* at 30, 31.)  In February 2009, Plaintiff left his job as a taxi driver because of pain in his back, feet and legs.  (*Id*. at 30-32.)  Plaintiff is diabetic, and has seen a primary care physician for his illness since 2004.  (*Id*. at 35.)  He stopped seeing his doctor in 2006 because he lacked medical insurance, but he resumed in 2009.  (*Id*. at 35, 36.)

   A.  *Adult Function Report*

In an adult function report dated June 6, 2009, Plaintiff reported that he began experiencing pain in his back, feet and legs in November 2008 that felt like "electric shocks" or a "stabbing" sensation.  (*Id*. at 139.)  Plaintiff mostly felt the pain in his legs, but it often spread to other parts of his body, such as his hands and shoulders.  (*Id*.)  He reported that the pain would come and go throughout the day, and when he lifted objects or walked for long periods of time. (*Id*. at 136.)  Plaintiff stated that he could only walk for ten blocks before having to stop and rest for seven minutes.  (*Id*. at 137.)

Plaintiff spent almost all of his time inside of his apartment, unless he had an appointment.  (*Id*. at 132.)  He used public transportation, and usually went outside alone.  (*Id*. at 134.)  Plaintiff normally shopped twice a week, taking over an hour to complete errands.  (*Id*. at 135.)  During a typical day, he bathed, watched television and socialized with relatives.  (*Id*. at 132.)  Plaintiff was able to prepare meals three times per day, but it took him much longer to prepare meals than it used to because of his illness.  (*Id*.)  He took one tablet of Methocarbamol

---

[2] As discussed *infra* at page 9, Plaintiff initially was not assisted by an interpreter, despite repeated entreaties by his paralegal representative for the ALJ to obtain one for Plaintiff.

three times per day to reduce the pain.  (*Id*. at 140.)  However, it did not fully relieve him of the pain, and, had the side effect of inducing sleepiness and headaches.  (*Id*.)

II.  **Medical Evidence**

    A.  *Evidence Prior to Plaintiff's Alleged Onset Date of 02/01/2009*

Plaintiff sought medical treatment at the Queens Medical Office, P.C. ("QMO") from 2004 until 2009, where he was evaluated by several doctors, including Alveris Molina, M.D., his primary care physician, and Jesse Weinberger, M.D. a neurologist.  (A.R. at 35, 36.)

 On November 10, 2004, Plaintiff went to Dr. Molina for a routine physical and health examination.  (*Id*. at 223-224.)  Plaintiff denied having any changes in his weight, feeling fatigued or weak.  (*Id*.)  He also denied having acute joint pain, chronic joint pain, swelling of joints and back pain.  (*Id*.)  Dr. Molina discussed nutrition, exercise and other treatment matters with Plaintiff.  (*Id*.)  Plaintiff seemed alert, well developed and nourished during his visit, but was diagnosed with diabetes mellitus with unspecified hyperlipidemia.  (*Id*. at 224.)  Dr. Molina also ordered blood tests be performed.  (*Id.* at 240-41.)

On November 26, 2004, Plaintiff followed up with Dr. Molina to obtain his test results, which showed Plaintiff had an elevated glucose level.  (*Id.* at 221-22, 240-41.)  He had no changes in his vision, or any back or joint pain.  (*Id*. at 222.)  Plaintiff denied having a history of anxiety, depression, schizophrenia or panic disorder.  (*Id*.)  His back and extremities had normal range of motion.  (*Id*.)  Dr. Molina prescribed Plaintiff Glucophage XR, Amaryl, and Vasotec. (*Id*.)  Plaintiff was encouraged to return for a follow-up visit in one month.  (*Id.*)

On December 23, 2005, Plaintiff returned to Dr. Molina complaining of a cough and sore throat that had lasted two weeks.  (*Id.* at 219-20.)  Dr. Molina prescribed the same diabetes medications and dosages as in November 26, 2004.  (*Id.* at 220.)  Plaintiff returned to QMO from

January through May 2006 to follow up with Dr. Molina, continued taking Amaryl and Vasotec at the same dosages, but was prescribed an increased the dosage for Glucophage, and Zithromax, a new medication, by Dr. Molina.  (*Id*. at 211-18.)

Plaintiff visited Dr. Molina between October and December 2006, during which time he gained seven pounds, but his vision, heart rate and extremities were all normal.  (*Id*. at 205-10.) However, on October 2, 2006, he complained of having episodes of diaphoresis, general weakness and knee pain.  *(Id*. at 210.)  Plaintiff also reported that he no longer had any medications at home.  (*Id.* at 210.)

    B.  *Evidence On and After Plaintiff's Alleged Onset Date of 02/01/2009*

       1.  Dr. Molina

On May 4, 2009, Plaintiff resumed treatment with Dr. Molina, almost three years after his last visit.  (A.R. at 203, 204.)  The gap in treatment was caused by Plaintiff's loss of health insurance.  (*Id*. at 35.)  Plaintiff returned to Dr. Molina because he experienced pain and numbness in his lower extremities, and vision changes.  (*Id*. at 35, 203.)  Upon examination, Dr. Molina observed neurological deficits.  (*Id*. at 204.)  Plaintiff indicated he had not taken his medications for many months.  (*Id*.)  Dr. Molina restarted him on Glucophage, prescribed Elavil, and recommended that he consult with an ophthalmologist and podiatrist.  (*Id*.)  Blood and urinalysis tests were also performed at this visit.  The laboratory results showed that Plaintiff had elevated glucose and cholesterol levels.  (*Id.* at 294-96.)  Plaintiff was directed to return for a follow up visit with Dr. Molina in two weeks.  (*Id.*)

On May 15, 2009, Plaintiff returned for his follow up visit.  Dr. Molina documented numbness and weakness in Plaintiff's nervous system.  (*Id.* at 289.)  Dr. Molina started him on a

low fat diet, doubled his Glucophage dosage, prescribed Simvastatin and recommended that Plaintiff return to QMO in one month. (*Id*. at 290.)

Plaintiff returned for a June 5, 2009 follow up visit. Dr. Molina noted a loss of sensation, numbness and weakness in Plaintiff's nervous system. (*Id*. at 288.) Plaintiff stated that he continued having bilateral leg pain. (*Id*. at 200, 288.) Dr. Molina directed Plaintiff to continue taking his medication and see a neurologist for his lower extremities. (*Id*.) Plaintiff returned to see Dr. Molina on July 11, 2009, for his neurological test results. (*Id.* at 287.) Plaintiff continued experiencing pain in his lower extremities, and now complained of pain in the upper back. (*Id*.) He was also talking Cymbalta. (*Id*.)

By August of 2009, Plaintiff's physical and psychiatric conditions appeared to worsen. (*Id.* at 284.) He complained of muscle weakness, chronic back pain, numbness, tingling, anxiety and depression. (*Id*.) Upon examination by Dr. Molina, Plaintiff was found to have a lumbar spine herniated disc, and diabetic neuropathy. (*Id*. at 285.) Dr. Molina diagnosed Plaintiff with diabetes mellitus with neurological manifestations. (*Id*. at 285, 287.) Plaintiff's blood test showed that he had heightened glucose levels. (*Id*.) As a result, Dr. Molina prescribed insulin Levemir. (*Id*.)

On August 27, 2009 Dr. Molina completed a diabetes mellitus residual functional capacity questionnaire, stating that Plaintiff suffered from a variety of symptoms, including, fatigue, extremity pain and numbness, hyper/hypoglycemic attacks and kidney problems. (*Id.* at 277.) Dr. Molina confirmed that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. (*Id*. at 278.)

Dr. Molina determined that Plaintiff was incapable of performing even "low stress" work because of Plaintiff's frequent leg pain. (*Id*. at 278.) Dr. Molina said that Plaintiff could only

walk one city block without rest or severe pain, and could only sit or stand for no more than five minutes at a time.  (*Id*.)  Plaintiff would need a job that allowed shifting positions at will from sitting and unscheduled breaks. (*Id*.)  However, he noted that Plaintiff would not be required to use a cane or other assistive device while standing or walking.  Dr. Molina further stated that Plaintiff would have difficulties lifting and carrying objects in a competitive work situation.  (*Id*. at 280.)  He estimated that Plaintiff would miss more than four days per month at work as a result of his physical impairments and treatment.  (*Id*.)

### 2. Dr. Weinberger

Dr. Molina referred Plaintiff to Dr. Jesse Weinberger, a neurologist, after Dr. Molina diagnosed him with diabetes mellitus with neurological manifestations.  (*Id*. at 36, 284-87.)  Dr. Weinberger treated Plaintiff every two to three weeks from July 29, 2009 to September 29, 2009.  (*Id*. at 304.)   Dr. Weinberger completed a diabetes mellitus residual functional capacity questionnaire on September 29, 2009.  (*Id*. at 304-08.)  Plaintiff was diagnosed with a herniated lumbosacral disc, and standing and walking produced severe sciatica.  (*Id*. at 304-05.)  Dr. Weinberger also documented weakness of the dorsiflexor of the left foot.   He noted that Plaintiff's experience of pain or other symptoms were constantly severe enough to interfere with attention or concentration.  (*Id*.)

Dr. Weinberger concluded Plaintiff could not perform "low stress" work, walk without rest, or sit for more than thirty minutes at a time.  (*Id*. at 306.)   Dr. Weinberger also concluded Plaintiff would be incapable of standing more than five minutes at one time before needing to sit or walk and that Plaintiff would be unable to walk even one city block.  (*Id*. at 305-06.)  Dr. Weinberger determined Plaintiff required a job that would allow him to shift positions at will, take unscheduled breaks every fifteen minutes, and rest for thirty minutes before returning to

work.  (*Id*. at 307.)  He also stated that Plaintiff must use a cane while occasionally standing and walking.  (*Id*.)  Dr. Weinberger concluded that Plaintiff could never work for an employer that demands him to lift more than ten pounds, twist, scoop, crouch or climb.  (*Id*.)

### 3.  Consultative Examination

On July 18, 2009, Dr. Tahmina Sikder performed a consultative internal medical examination of Plaintiff.  (A.R. at 267-70.)  She reported that he walked slowly, secondary to his foot pain and could squat less than halfway, secondary to his foot pain.  (*Id.* at 268.)  She also noted that Plaintiff's stance was very cautious, and his foot pain made it difficult for him to walk.  (*Id*.)  Plaintiff did not use any assistive devices and did not need any help with changing for the examination or getting on and off the exam table.  (*Id*.)  Dr. Sikder also examined his musculoskeletal function, and noted that the Plaintiff's cervical spine showed full functioning and movement.  (*Id*. at 269.)  His neurological function also was normal; however Dr. Sikder did observe some "decreased pinprick sensation on the bilateral feet."  (*Id*.)  Plaintiff's extremity function showed no cyanosis, clubbing or edema and no muscle atrophy was evident.  (*Id*.)  Dr. Sikder also concluded that Plaintiff's left extremity and all other extremities had full strength and range of motion.  (*Id*. at 269.)

Dr. Sikder's overall prognosis for Plaintiff was guarded.  (*Id*. at 270.)  She determined that Plaintiff was moderately to markedly limited in "walking, standing, lifting, carrying and bending, secondary to his worsening diabetic neuropathy."  (*Id*.)  She also found that he had no fine motor limitations.  (*Id*.)

### C.  Hearing Testimony

On October 13, 2009, the ALJ conducted a hearing regarding Plaintiff's disability claim. (A.R. 26-45.)  Plaintiff was represented by a paralegal from Queens Legal Services.  (*Id*. at 91.)

Drs. Molina, Weinberger, and Sikder were not present at the hearing and were not called by the ALJ to testify.  The hearing began with Plaintiff, unassisted by a Spanish language interpreter, explaining that he was born in Ecuador and came to the United States in 1988.  (*Id*. at 27.) However, Plaintiff's representative alerted the ALJ that Plaintiff was having trouble understanding the ALJ's questions and asked the ALJ if an interpreter could be used.  (*Id*. at 28.) The ALJ responded, "Wait a minute. I'll let you know what I think.  If I can't understand him and he can't understand me." (*Id*.)  Plaintiff's representative then voiced her concern that Plaintiff was confusing the questions.  (*Id*.)  The ALJ replied, "Wait a minute.  Just hold on.  I make that judgment, not you." (*Id*.)

The ALJ then proceeded to ask Plaintiff questions about his work history.  (*Id*. at 29-33.) Despite some confusion in the exchange between Plaintiff and the ALJ, Plaintiff explained his work history, including his history as a taxi driver, a distributor in a wool factory, and a building porter.  (*Id*. at 29-31.)  Plaintiff also explained that he left his job as a taxi driver in February of 2009 because of pain in his back, head and feet.  (*Id*. at 32-33.) The ALJ then asked Plaintiff about his treatment history with Dr. Molina; however Plaintiff was unable to understand the ALJ's questions. (*Id.* at 32-33.)  At this point the ALJ sought out an interpreter for use in the remainder of the hearing.  (*Id.* at 33.)

After an interpreter was brought to the hearing room, the ALJ started his questioning over again.  (*Id.* at 33.)  Plaintiff testified that the first time he saw Dr. Molina for treatment was in 2004 and that he continually saw Dr. Molina until 2006, when he lost his insurance.  (*Id.* at 35.) Plaintiff resumed his treatment with Dr. Molina in May of 2009.  (*Id.*)  Plaintiff further testified that Dr. Weinberger, his treating neurologist, directed him to undergo an MRI examination.  (*Id.* at 36.)  The ALJ reviewed the results of the MRI, and, after the ALJ read some of the results

into the record he noted, in reference to Dr. Weinberger, "Let's see what else he says, this doctor." (*Id.* at 37.)

The ALJ then asked Plaintiff what activities he performed during a normal day. (*Id.* at 37.)  Plaintiff explained that on an average day, after he awoke, he would clean himself, drink coffee, watch television, and listen to music.  (*Id.*)  Plaintiff often would play cards by himself and read Spanish language newspapers.  (*Id.* at 38.)  Plaintiff's mother, who lives in the same building as Plaintiff, would do his food shopping and cook for him.  (*Id.*)  Plaintiff stated that he could not walk more than one block because of pain in his feet.  (*Id.* at 39.)  Plaintiff sought treatment from a podiatrist who directed Plaintiff to wear prescription shoes; however the shoes would not help for the whole day.  (*Id.*)  Plaintiff could only sit for up to five minutes at a time.  (*Id.*)  He explained that even while sitting in the hearing he was experiencing pain in his waist and feet.  (*Id.*)  To reduce the pain in his waist Plaintiff had to lean towards one side of his chair and then towards the other and he could not have his feet off the ground or flat on the floor for long periods of time.  (*Id.* at 39-40.)  Plaintiff also testified that he had begun utilizing a cane at the direction of Dr. Molina.  (*Id.* at 40.)

Plaintiff stated he was only able to sleep about four and one half hours each night because of the pain in his body as well as the side effects from his medications, which include stomach pains, nausea, and dizzy spells.  (*Id.* at 43-44.)  Plaintiff concluded his testimony by explaining that he was diagnosed with diabetes ten or twelve years ago and that he currently was experiencing pain all over his body.  (*Id.* at 42-43.)

## DISCUSSION

### I.      Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow.  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F. 3d 496, 504 (2d Cir. 1998).  The former determination requires the court to ask whether the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act.  *Echevarria v. Sec'y of Health & Human Servs.,* 685 F. 2d 751, 755 (2d Cir. 1982) (internal quotations omitted).  The latter determination requires the court to ask whether the decision is supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).  A remand by the court for further proceedings is appropriate when the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations.  *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004).   A remand to the Commissioner is also appropriate [w]here there are gaps in the administrative record.  *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314

(E.D.N.Y. 1997)).  ALJs, unlike judges, have a duty to affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings.  *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999).

## II.    Disability Claims

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d).  Claimants establish disability status by demonstrating an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require.  42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920.  If at any step, the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there.  First, the claimant is not disabled if he or she is working and performing substantial gainful activity.  20 C.F.R. §§ 404.1520(b); 416.920(b).  Second, the ALJ considers whether the claimant has a severe impairment, without reference to age, education or work experience.  Impairments are severe when they significantly limit a claimant's physical or mental ability to conduct basic work activities.  20 C.F.R. §§ 404.1520(c); 416.920(c).  Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 ("Appendix 1").  *See* 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five.  20 C.F.R. §§ 404.1520(e); 416.920(e).  In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work.  20 C.F.R. §§ 404.1520(e); 416.920(f).  Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience.  If so, the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(g).  At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work.  *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F. 2d at 642).

### III.    ALJ's Decision

The ALJ followed the five-step procedure to make his determination that Plaintiff is not disabled.  (*See* A.R. at 13-24.)  The ALJ concluded that the first and second steps were met because, from Plaintiff's alleged February 1, 2009 onset date through the date of the decision,[3] Plaintiff did not engage in substantial gainful activity, and Plaintiff's diabetes and diabetic neuropathy qualified as medically severe impairments.  (*Id.* at 15.)  However, as part of the second step, the ALJ determined that Plaintiff's hyperlipidemia and high cholesterol were not medically severe impairments.  (*Id.*)  Moreover, the ALJ did not consider Plaintiff's degenerative disc-disease as part of his finding in step two. (*Id.*)  At step three, the ALJ determined that Plaintiff's impairments, individually or combined, did not meet one of the impairments listed in Appendix 1.  (*Id.* at 16.)

At step four, the ALJ found Plaintiff had the RFC for the full range of sedentary work, (*id.* at 16), and that Plaintiff's impairments did not prevent him from performing his past relevant

---

[3] Plaintiff's last insured date is December 31, 2012.  (*See* A.R. at 15.)

work as a taxi driver, provided that he avoided lifting and carrying.  (*Id.* at 22).  In reaching this conclusion, the ALJ accorded "some weight" to the opinion of Dr. Sikder, the consultative physician, (*id.* at 21), but the ALJ determined that "little weight" should be given to the opinions of Plaintiff's treating physicians.  (*See id.* at 21-22).  Specifically, the ALJ concluded that both Dr. Molina's and Dr. Weinberger's opinions:  (i) are not supported by clinical evidence; (ii) are inconsistent with the record as a whole; and (iii) appear to be based entirely on Plaintiff's subjective complaints, rather than on objective clinical findings.  (*Id.*)  Moreover, the ALJ concluded that, while Plaintiff's medically determinable impairments could be expected to cause the symptoms alleged, nevertheless, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible.  (*Id.* at 20.)  Finally, at the fifth step, the ALJ determined, pursuant to the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, that Plaintiff could make a successful adjustment to other available work.  (*Id.* at 23.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act.  (*Id.*)

As set forth in more detail below, the ALJ's decision is based on an incorrect application of the pertinent legal standards.  Specifically, in reaching his decision, the ALJ provided insufficient factual and legal support for his conclusion that Plaintiff's impairments did not meet or medically equal a listed impairment.  Moreover, the ALJ failed to properly apply the treating physician rule and failed to meet his affirmative duty to develop the administrative record. Accordingly, this matter must be remanded for further proceedings before a different ALJ.[4]

---

[4] The administrative record here demonstrates that ALJ Nisnewitz, not only initially disregarded Plaintiff's need for a Spanish language interpreter, but he was dismissive, rude, and intolerant. His failure to subpoena any of Plaintiff's treating physicians, including a specialist, to amplify the record shows a blatant disregard, not only of the legal standards, but of his obligations as a judicial officer and the basic rights and humanity of a vulnerable segment of our society, the disabled.  This court previously noted such intolerable conduct by ALJ Nisnewitz.  *See Bailey v.*

## IV.    Analysis

### A.  *ALJ Failed to Provide Sufficient Rationale to Support a Finding That Plaintiff's Impairments Did Not Meet or Medically Equal a Listed Impairment*

The ALJ determined, during the third step of his evaluation, that Plaintiff's impairments did not meet or medically equal listed impairment "Diabetes Mellitus," found in § 9.08 of Appendix 1.  (A.R. at 16.)  However, the ALJ failed to provide any factual or legal support for his conclusion.  (*See id*.)  Plaintiff argues the evidence shows he meets the criteria for Diabetes Mellitus, and, therefore, the ALJ erred in not finding him disabled at step three.  (Pl. Mem. at 18.)  The court disagrees with Plaintiff and finds the record, as presently developed, does not compel only a finding that Plaintiff meets the criteria for Diabetes Mellitus.  However, because the ALJ failed to make findings of fact and conclusions of law to justify his decision, this court cannot conclude his decision is supported by substantial evidence.  *See Schaal*, 134 F. 3d at 504. Accordingly, the matter is remanded for further development of the record.

When reaching a decision as to whether a claimant is disabled within the meaning of the Act, an ALJ "must discuss the relevant evidence and factors crucial to the overall determination with sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial evidence." *Ramos v. Barnhart,* 2003 WL 21032012, at *7 (S.D.N.Y May 6, 2003) (quoting *Ferraris v. Heckler*, 728 F. 2d 582, 587 (2d Cir. 1984)) (internal quotation marks omitted) (alterations in the original).  However, where an ALJ fails to state findings or conclusions regarding a claim of disability, especially where a claimant has arguably demonstrated that his symptoms meet a listed impairment, the reviewing court "cannot determine

---

*Astrue*, 815 F. Supp. 2d 590 (E.D.N.Y. 2011); *Ginsberg v. Astrue*, 2008 WL 3876067 (E.D.N.Y. Aug. 18, 2008).

whether the ALJ's conclusion was based on a correct application of the law and whether there is substantial evidence in the record to support it." *Aponte v. Sec'y of Health and Human Servs.*, 728 F. 2d 588, 592-93 (2d Cir. 1984).

Here, Plaintiff alleges his diabetic neuropathy meets the criteria for the listed impairment Diabetes Mellitus.  (Pl. Mem. at 18.)  To meet the criteria for this impairment a complainant must demonstrate:

> Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station.

20 C.F.R. pt. 404, subpt. P, app. 1, § 9.08A.  Further, listing § 11.00C, relating to "Neurological" impairments, requires:

> Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment.   The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00C.

Indeed, as Plaintiff asserts, there is evidence in the record to support the conclusion that Plaintiff's "severe combination of impairments" of diabetes and diabetic neuropathy satisfies the criteria for the Diabetes Mellitus listing.  (A.R. at 15.)  Plaintiff underwent numerous medical examinations and the record contains documentation from two treating physicians, one of whom was a neurologist, and a state consultative physician.  The record demonstrates that, on June 5, 2009, Dr. Molina, Plaintiff's primary care physician, noted numbness, weakness and bilateral leg pain, and referred Plaintiff for a lower extremity neurological evaluation.  (*Id.* at 200.)  On August 14 and 27, 2009, Dr. Molina diagnosed plaintiff with diabetes mellitus with neurological

16

manifestations.  (*Id.* at 285, 287.)  On August 27, 2009, Dr. Molina completed a diabetes mellitus residual functionality questionnaire and concluded that plaintiff was incapable of even "low stress" jobs.  (*Id.* at 278.)  Plaintiff's treating neurologist, Dr. Weinberger, reached the same conclusion in a September 29, 2009 residual functionality questionnaire.  (*Id.* at 306.)  Dr. Weinberger reported that Plaintiff experienced pain severe enough to interfere with attention and concentration, back pain radiating down his left leg, and the inability to walk even one city block.  (*Id.* at 305-06.)  Moreover, the consultative physician, Dr. Sikder, observed that Plaintiff had difficulty walking and squatting due to foot pain, (*id*. at 268), and "decreased pinprick sensation on bilateral feet."  (*Id.* at 269.)

However, the record also contains evidence militating against a finding that Plaintiff satisfies the criteria for the Diabetes Mellitus listing.  In a June 6, 2009 disability function report, Plaintiff reported the ability to walk ten city blocks.  (*Id.* at 137.)  On July 18, 2009, Dr. Sikder noted that Plaintiff's activities included daily cooking and personal hygiene, doing laundry once per week, and shopping three times per week.  (*Id.* at 268.)  Dr. Sikder also noted that, while Plaintiff's stance was cautious and his foot pain made it difficult for him to walk, he did not use any assistive devices and needed no help getting on and off the examination table.  (*Id.*)  Despite Plaintiff's complaint of weakness in the left leg, Dr. Sikder concluded that plaintiff's left extremity and all other extremities have full strength and range of motion.  (*Id.* at 269.)

Notwithstanding the conflicting evidence, the ALJ determined in a conclusory manner, without providing any rationale or factual support or eliciting testimony from any of the treating physicians (*see* Section B *infra*), that "the claimant's condition does not meet or medically equal the criteria of [Diabetes Mellitus], or indeed, any of the impairments listed in Appendix 1." (A.R. at 16.)  While the present record does not "compel but one conclusion" regarding whether

17

Plaintiff has met a listed impairment, *see Johnson v. Bowen*, 817 F. 2d 983, 986 (2d Cir. 1987) (agency reconsideration unnecessary where application of the correct legal principles to the record could lead to only one conclusion), Plaintiff has at least arguably demonstrated that his symptoms met the criteria for Diabetes Mellitus.  In this circumstance, because the ALJ failed to set forth any support for his conclusion that Plaintiff's condition does not meet a listed impairment, this court is unable to determine whether the ALJ's conclusion was based on a correct application of the law or whether there is substantial evidence in the record to support it.

Based on the foregoing alone, remand to the Commissioner is required to develop findings of fact and conclusions of law as to Plaintiff's claim that he has met the criteria for Diabetes Mellitus.  *See Pratts v. Chater*, 94 F. 3d 34, 39 (2d Cir. 1996) (internal citation and quotation marks omitted) (remand is appropriate where, as here, the reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision."); *Aponte*, 728 F. 2d at 592-93 (case remanded where evidence suggested that claimant could satisfy "at least Part A" of one of the listings, but the ALJ failed to provide rationale for why claimant did not satisfy the listing); *see also Velazquez v. Barnhart*, 2004 WL 367614, at *7 (D.Conn. Feb.19, 2004) (ALJ's failure to provide detail to support his conclusions rendered court unable to determine whether ALJ's decision that claimant's condition did not meet any listing was supported by substantial evidence).

### B.  The ALJ Improperly Applied the Treating Physician Rule and Failed to Adequately Develop the Record

However, remand is also required due to the ALJ's improper application of the "Treating Physician Rule" and failure to develop the record.  The ALJ improperly accorded "little weight" to the opinions of Plaintiff's treating physicians, Drs. Molina and Weinberger (collectively, the "Treating Physicians"), when determining Plaintiff was not disabled within the meaning of the

Act.  (*See* A.R. at 21-22.)  Plaintiff argues the Treating Physicians' opinions are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence of the record.  As such, he contends the Treating Physicians' opinions should receive controlling weight.  (Pl. Mem. at 19-22.)  Moreover, Plaintiff asserts that, with the proper assignment of controlling weight to the Treating Physicians' opinions, the record contains persuasive proof of disability and remand is appropriate solely for the calculation of benefits.  (*Id.* at 22.)   The Commissioner counters that the ALJ properly accorded no controlling weight to the Treating Physicians' opinions because they are unsupported and inconsistent with the findings of the consultative physician.  (*See* Dkt. Entry 17, Reply Mem. of Law in Further Supp. of Def.'s Mot. for Remand ("Def. Rep.") at 5.)

The court disagrees with both the Commissioner and Plaintiff and instead finds that the record, as presently developed, provides an insufficient basis for determining the appropriate weight to be given to the opinions of Plaintiff's Treating Physicians.  Here, the Administrative Record contains inconsistencies in the Treating Physicians' opinions, as well as conflicts between the Treating Physicians' opinions and the consultative physician opinions, regarding the extent of Plaintiff's impairment.  Despite these inconsistencies and conflicts, the ALJ accorded "little weight" to the Treating Physicians' opinions without properly applying the treating physician rule and fulfilling his affirmative duty to seek out additional medical information to develop the record.  None of the doctors were called to testify at the hearing nor did the ALJ ask for an additional medical examination of Plaintiff to resolve any potential conflict in the record.

A treating source's medical opinion on the nature and severity of an impairment is given controlling weight when it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.

*Schisler v. Sullivan*, 3 F. 3d 563, 567 (2d Cir. 1993) (citing 20 C.F.R. 404.1527(d)).  Social security regulations define "treating source" as the claimant's "own physician, psychologist, or other acceptable medical source who provides a claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant." *Brickhouse v. Astrue*, 331 F. App'x 875, 877 (2d Cir. 2009) (citing 20 C.F.R. § 404.1502).

If an ALJ determines that a treating physician's opinion is not controlling, he or she is still required under social security regulations to consider the following six factors in determining the proper weight to be accorded to the treating physician's opinion:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the relationship; (iii) the evidence provided to support the treating physician's opinion; (iv) the consistency of the opinion with the record as a whole; (v) whether the opinion is from a specialist; and (vi) other factors brought to the Commissioner's attention that tend to support or contradict the opinion.  *Clark v. Comm'r of Soc. Sec.*, 143 F. 3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)).  *See also Pimenta v. Barnhart*, 2006 WL 2356145, at *4 (S.D.N.Y. Aug. 14, 2006).  Additionally, the ALJ must always give "good reasons" in his or her decision for the weight accorded to a treating physician's medical opinion.  *Id.*  "Failure to provide 'good reason' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F. 3d 128, 133 (2d Cir. 1999) (citing *Schaal*, 134 F. 3d at 505).

However, certain ultimate conclusions are not made by the treating physicians but, instead, are made by the ALJ.  Such decisions include the determination that a claimant is "disabled" or "unable to work."   20 C.F.R. § 404.1527(e)(1).   "[T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to

whether those data indicate disability.  A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell*, 177 F. 3d at 133.

Here, despite the ALJ's brief consideration of some of the applicable 20 C.F.R. § 404.1527(d) factors, he did not fulfill his duty to consider all of the factors before according "little weight" to the Treating Physicians' opinions.  *See Clark,* 143 F. 3d at 118 (20 C.F.R. § 404.1527(d) factors "must" be considered when a treating physician's opinion is not given controlling weight).  For example, Dr. Molina, Plaintiff's primary care physician, first began treating Plaintiff in 2004.  (A.R. at 223-24.)  Dr. Molina continued treating Plaintiff through October of 2006.  (*Id.* at 207-10.)  Plaintiff did not return to Dr. Molina for treatment until May of 2009 owing to a lapse in his insurance coverage.  (*Id.* at 35-36.)  However, between May 2009 and August 2009, Dr. Molina treated Plaintiff on five occasions, each time noting a degeneration of Plaintiff's condition.  (*Id.* at 284-91.)  Dr. Molina, having examined Plaintiff throughout the course of his illness, is best suited to provide a "detailed, longitudinal picture" of Plaintiff's impairments.  *See Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 344 n.4 (E.D.N.Y. 2010) (more weight generally given to opinions from treating physicians as treating physicians are "most able to provide a detailed, longitudinal picture" of a claimant's impairment (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* 20 C.F.R. § 404.1527(d)(2)(ii) (treating physician's opinion is given more weight if he has "more knowledge" about a claimant's impairment).  Here, the ALJ simply failed to consider the extent of Dr. Molina's relationship with Plaintiff when determining Dr. Molina's opinions should only be accorded "little weight."

Furthermore, Dr. Weinberger is a specialist in neurology who treated Plaintiff six times between June 2009 and September 2009, upon referral from Dr. Molina.  (*Id.* at 309-18.) However, the ALJ made no mention of Dr. Weinberger being a neurologist specifically, or a

specialist generally.    More weight is generally given to the "opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).  This is especially relevant in this case because Plaintiff was diagnosed with diabetes with neurological manifestations type II or unspecified type uncontrolled.  (*See, e.g.,* A.R. at 200, 202, 285, 287, 290.)  Because an ALJ "must" consider the § 404.1527(d) factors, and the ALJ failed to do so here, remand is necessary.

As a corollary to the treating physician rule, when "an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly." *Toribio v. Astrue*, 2009 WL 2366766, at *10 (E.D.N.Y. July 31, 2009) (quoting *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998)); *see also* 20 C.F.R § 404.1512(e)(1) (requiring the ALJ to contact the treating physicians to seek "additional evidence or clarification" regarding any conflict, ambiguity, or lack of clinical or diagnostic support).  This duty exists whether the claimant is represented by counsel or where, as here, by a paralegal.  *Perez v. Chater*, 77 F. 3d 41, 47 (2d Cir. 1996).

An ALJ fulfills this duty where, for example, he or she makes reasonable efforts to contact a treating source to request "copies of [the claimant's] medical source's records, a new report, or a more detailed report from [the claimant's] medical source."  *Eschmann v. Astrue*, 2011 WL 1870294, at *11 (E.D.N.Y. May 16, 2011) (quoting 20 C.F.R § 404.1512(e)(1)) (alterations in the original); *see also Toribio*, 2009 WL 2366766, at *10 (citations omitted) (ALJ fulfills affirmative duty to seek out more information from treating physician where the ALJ makes reasonable efforts to contact treating source for clarification of treating source's opinion). The only exception to this duty is when the Commissioner "know[s] from past experience that

22

the [treating] source either cannot or will not provide the necessary findings."   20 C.F.R. § 404.1512(e)(2).   An ALJ's failure to contact a treating physician where there are perceived inconsistencies or gaps in the record is a breach of the ALJ's duty and provides a basis for remand. *Pearson v. Astrue*,  2012 WL 527675, at *7 (N.D.N.Y.  Feb. 17, 2012) (citing *Lawton v. Astrue*, 2009 WL 2867905, at *16  (N.D.N.Y. Sept. 2, 2009)).

Here, the ALJ accorded "little weight" to the Treating Physicians opinions' because he baldly concluded, in part, that the opinions lacked objective findings and clinical support.  (*See* A.R. at 21-22.)  However, despite the ALJ's affirmative obligation to develop the record, nothing in the ALJ's decision indicates he contacted the Treating Physicians to seek "additional evidence or clarification," 20 C.F.R § 404.1512(e)(1), regarding the perceived lack of clinical evidence. (A.R. at 13-24.)

Specifically, the ALJ accorded Dr. Molina's opinions "little weight" because Dr. Molina: 1) failed to perform tests of attention or concentration on Plaintiff, despite his opinion that Plaintiff's diabetes was severe enough to interfere with his attention and concentration (*id.* at 21); 2) failed to provide clinical evidence indicating the effect that a low stress job would have on Plaintiff's health, despite his opinion that Plaintiff was incapable of low stress jobs because of recurrent leg pain (*id.*); and 3) failed to provide any medical evidence to support his finding regarding the impairment of Plaintiff's abilities to sit, stand/walk, lift/carry, as well as his ability to utilize the fine motor capabilities of his fingers.  (*Id.*)

Moreover, the ALJ accorded Dr. Weinberger's opinions "little weight" because Dr. Weinberger: 1) failed to provide numerical findings to support his finding of weakness in Plaintiff's left foot (*id.* at 22); 2) failed to perform tests of attention or concentration on Plaintiff, despite his opinion that Plaintiff's diabetes was severe enough to interfere with his attention and

concentration (*id.*); 3) failed to provide clinical support for his findings regarding Plaintiff's ability to sit, stand/walk, and lift/carry (*id.*); and 4) failed to provide an explanation for his opinion that Plaintiff required bed rest on and off during the day.  (*Id.*)

Despite highlighting a variety of perceived instances where the Treating Physicians' opinions may have lacked clinical or diagnostic support, the ALJ failed to fulfill his affirmative duty to seek out more information from the Treating Physicians regarding the their medical conclusions.  Indeed, the ALJ's decision "reveals a host of lost opportunities," *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990), for seeking additional evidence or clarification from Plaintiff's Treating Physicians that might have yielded a different conclusion as to Plaintiff's disability status.  "By foregoing those opportunities, and by [giving little weight to] a treating physician's medical assessment without fully developing the factual record, the ALJ committed legal error." *Rosa v. Callahan*, 168 F. 3d 72, 80 (2d Cir. 1999).

Accordingly, the matter is remanded for the ALJ to consider all the 20 C.F.R. § 404.1527(d) factors and to fulfill his affirmative obligation to develop the record before determining the proper weight to accord the opinions of Plaintiff's Treating Physicians.[5]

---

[5] The record is completely silent as to any evidence from a vocational expert in this case.  The ALJ assumed plaintiff could work as a "taxi/limousine driver" without offering any support from a vocational expert. (A.R. at 22.) On remand, the ALJ shall also develop the record in this regard.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion is granted and Plaintiff's cross-motion for judgment on the pleadings is denied.  Accordingly, the Commissioner's decision is reversed and this case is remanded to the Commissioner pursuant to the fourth and sixth sentences of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.  The court directs that, on remand, this matter be assigned to a different ALJ, as the administrative record indicates a level of rudeness, dismissiveness and intolerance on the part of ALJ Nisnewitz that was not appropriate and did not advance the ultimate goal of developing the record in a meaningful way.  The parties have advised the court that Plaintiff has a new disability application pending before the Commissioner.  Therefore, it may make sense to join the remand of this matter with the new pending matter.

SO ORDERED.

Dated: Brooklyn, New York
       March 27, 2012

                                    /s/
                            DORA L. IRIZARRY
                         United States District Judge